IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) 1:17-cv-593 |
| v. | )<br>) |
| ATHALIA CRAYTON; TANEEDA FERRON, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff New York Life Insurance Company ("New York Life"), issuer of a life insurance policy for Joyce Ferron, brought this interpleader action to resolve conflicting claims by her daughters, Defendants Athalia Crayton and Taneeda Ferron, for benefits that had become payable upon her death. New York Life admitted liability and was dismissed from the case after depositing the policy proceeds with the court.

A bench trial was conducted on January 10, 2019. Athalia Crayton presented her own testimony, as well as that of her husband, Robert Crayton, and her brother, Clifford Thompson, and introduced exhibits. At the close of Athalia Crayton's evidence, Taneeda Ferron moved for judgment in her favor, and the court reserved ruling. Taneeda Ferron then presented her own testimony, introduced exhibits, and rested.

Pursuant to Federal Rule of Civil Procedure 52(a), the court enters the following findings of fact — based upon an evaluation of the evidence, including the court's assessment of the credibility of the witnesses, and the inferences the court has found reasonable to draw therefrom — and conclusions of law. To the extent any factual statement is contained in the conclusions of law, it is deemed a finding of fact as well.

I.  **FINDINGS OF FACT**

1. Joyce Ferron was a member of AARP and was eligible to apply for life insurance under Group Policy No. AA-31 issued by New York Life.

2. Pursuant to the group policy, Joyce Ferron applied for, and on or about September 17, 2004, was issued individual life insurance Certificate No. A18-650-60. (Ferron Ex. 1.) As part of the written application mailed to New York Life, Joyce Ferron designated Taneeda Ferron as sole beneficiary of the policy death benefit. (Ferron Ex. 7.)

3. The monthly insurance premiums were timely mailed and paid by Joyce Ferron and, at times, members of her family, including her children Clifford Thompson, Taneeda Ferron, Anthony Ferron, and Athalia Crayton.

4. Athalia Crayton is a resident of North Carolina, and Taneeda Ferron is a resident of South Carolina.

5. On or about September 30, 2011, by paper form, Joyce

Ferron mailed New York Life an application to exchange the original policy for individual life insurance Certificate No. A60-078-061, which included a transfer of Taneeda Ferron's beneficiary status to the new policy. (Ferron Ex. 6.) Monthly premiums were $122.15. (Id.)

6. On or about October 29, 2014, by paper form, Joyce Ferron mailed New York Life a form correcting her social security number in New York Life's records. (Id.)

7. Joyce Ferron also mailed New York Life a written request for additional envelopes in which to place her monthly premium payments. (Id.)

8. Joyce Ferron lived at her own residence in Columbia, South Carolina, until 2010, when she moved in with Taneeda Ferron — also in Columbia, South Carolina. Joyce Ferron continued to reside with Taneeda Ferron until May 2016, when she procured her own residence. In November 2016, Joyce Ferron moved back in with Taneeda Ferron, until December 23, 2016, when Athalia Crayon took her to the latter's residence near High Point, North Carolina. Joyce Ferron resided with Athalia Crayton from December 23, 2016, until her death on January 10, 2017.

9. In 2016, Joyce Ferron suffered from cancer. Her health deteriorated rapidly as the cancer progressed to Stage IV in November 2016. After a fit of vomiting, she was taken to the Emergency Department, where radiological scans showed that the

cancer had spread to her liver. On November 23, 2016, her oncologist advised her she had only months to live.

10. Both Athalia Crayton and Taneeda Ferron have from time to time assisted their mother in coordinating her medical care. To assist in this manner, Athalia Crayton would drive from her home in North Carolina.

11. Although Joyce Ferron's mental acuity may have begun to decline by December 2016, she remained mentally competent through the fall, making a trip by automobile to Miami, Florida, for a family member's "gender reveal," and through December 19, 2016, as evidenced by her having given informed consent to a medical procedure that date. (See Crayton Ex. 3.)

12. At times relevant here, Joyce Ferron did not own a computer or subscribe to an internet service. Her electronic devices were limited to a "flip phone" and a CapTel telephone — designed for persons with hearing loss — that transcribes spoken words and displays them on a screen.

13. New York Life records indicate that, on December 19, 2016, through the company's internet portal, Taneeda Ferron was removed as the beneficiary of Joyce Ferron's life insurance policy and replaced by Athalia Crayton. This change appears to have been in compliance with the change of beneficiary procedures of the policy. Compare (Ferron Ex. 1 at 9 ("To . . . designate a beneficiary or change a beneficiary designation; . . . WE must be

4

given a completed, written request on a form satisfactory to US. Such request must be approved and recorded by or on behalf of US.")) with (Doc. 1 (New York Life complaint) ¶ 10 ("On or about December 19, 2016, the Insured designated Athalia Crayton as the Policy's beneficiary via the Company's website.")).

14. Notice of the beneficiary change was sent to Taneeda Ferron, who called and wrote New York Life to contest the change as improper. (Ferron Exs. 3, 4.)

15. Joyce Ferron died from her cancer on January 10, 2017, at 71 years of age, at Athalia Crayton's home near High Point, North Carolina. At the time of her death and in the months preceding it, she also suffered from chronic glaucoma, severe osteoarthritis, and marked hearing loss that did not improve with hearing aids.

16. Upon Joyce Ferron's passing, the insurance death benefit became due in the amount of $25,278.65.

17. At Athalia Crayton's direction, Joyce's Ferron's body was taken to a funeral home. Athalia Crayton filed claims with New York Life for payment of funeral expenses using the life insurance proceeds. (Crayton Ex. 4.) Although Taneeda Ferron contested Athalia Crayton's entitlement to the proceeds, she consented to use of $9,852.60 to pay funeral expenses, which New York Life approved.

18. New York Life filed an interpleader action in this court

and, upon depositing the remaining $15,426.05 of the death benefit with the court, was dismissed from the action.

19.　At trial, Athalia Crayton testified that on December 19, 2016, she gave her mother her smartphone and observed her using it on the internet that morning at Taneeda Ferron's house to change the life insurance beneficiary.  Clifford Thompson, Athalia Crayton's brother, testified that Joyce Ferron had told him that she wanted to change the beneficiary to Athalia Crayton, and that — on December 18, 2016, the day before the beneficiary change — he had observed Joyce Ferron, via a live video chat with her, looking through her insurance papers to investigate how to make the change. He also testified that he spoke with his mother on December 19, 2016, before her procedure to give her support and that she told him she had changed the beneficiary online and asked him to double-check it to make sure she did it correctly.  He further testified that he "did go on the email" and "did see the confirmation that the change was made."  Athalia Crayton's husband, Robert Crayton, testified that he had observed Joyce Ferron using Taneeda Ferron's computer at some unspecified, previous time.[1]

---

[1] Athalia Crayton also presented evidence that on December 17, 2016, Joyce Ferron had given her a broad power of attorney to make all financial and property decisions.  (Crayton Ex. 2.)  Taneeda Ferron contests the legitimacy of the alleged power of attorney.  But because Athalia Crayton does not claim, nor did she present any evidence, that she changed the beneficiary on Joyce Ferron's life insurance — instead testifying that Joyce Ferron changed the beneficiary herself — there is no basis on which the power of attorney could support Athalia Crayton's claim.  The court, therefore, need not determine the legitimacy of the power of attorney.

20. The court does not find Athalia Crayton's evidence as to the change in beneficiary credible. The parties agree that on December 19, 2016, Joyce Ferron underwent a paracentesis – a medical procedure that involved draining fluid from her body cavity – as a consequence of her ongoing cancer. Athalia Crayton arrived at Taneeda Ferron's home to pick up her mother at about 8:15 a.m., and sometime after getting her mother ready to travel, drove her to the medical center for the procedure in Columbia, South Carolina. Taneeda Ferron was home while Athalia Crayton was there and met her sister and mother at the medical center after they left her home. Joyce Ferron remained at the medical facility throughout the completion of the procedure; the medical record reveals that the procedure was conducted at 2:49 p.m. (Crayton Ex. 3.)

21. Taneeda Ferron presented evidence that she had never observed her mother use a computer (other than a computerized voting machine) and that — even beyond computer illiteracy — her mother's myriad health issues would have made it difficult to accomplish tasks via the internet on a computerized device. Taneeda Ferron also testified that she had been with Joyce Ferron during the morning and afternoon of December 19, 2016, preceding and following the paracentesis, and that she never witnessed her mother use a smartphone or other device for any purpose. In addition, Taneeda Ferron testified, the desktop computer which

7

Robert Crayton allegedly saw Joyce Ferron use was inoperable, and had been so for years.

22. As to the evidence relating to Joyce Ferron's actions in maintaining her New York Life policy and alleged change in beneficiary, the court finds Taneeda Ferron's evidence credible. Joyce Ferron was 71 years of age when she died, had no computing devices or internet service of her own, and was unaccustomed to navigating internet-connected devices. She was afflicted with severe glaucoma, hearing loss, and osteoarthritis, to the point that — as Athalia Crayton's evidence shows — her attempts to sign her own name on the December 17, 2016 power-of-attorney documents were so fruitless that the notary directed her to simply sign with an "X." (Crayton Ex. 2 at 2.) Finally, in every prior communication with New York Life referenced at trial, she had communicated exclusively by mail in paper form.

23. From December 2016 to the present, Athalia Crayton and Taneeda Ferron have disputed the proper place of burial for their mother. Athalia Crayton seeks to have her mother's remains buried in Jamaica, which she contends was her mother's wish; Taneeda Ferron disputes the wisdom of doing so. The relationship between the sisters has deteriorated to the point that they each called law enforcement on the other over events related to their mother's care and the insurance proceeds. On December 27, 2016, Taneeda Ferron contacted the Richland County Sheriff's Office (Columbia,

South Carolina) to complain that her sister, Athalia, had taken their mother to North Carolina and refused to return her to South Carolina for medical appointments. (Ferron Ex. 2.) That same week, when Taneeda Ferron came to Athalia Crayton's residence in North Carolina to check on her mother and protest the change in beneficiary, Athalia Crayton called the police to have Taneeda Ferron removed from her house.

## II. CONCLUSIONS OF LAW

24. The court has subject matter jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335, since the amount in controversy is greater than $500 and minimal diversity exists, see State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530 (1967).

25. In North Carolina, it is a "well-settled principle that an insurance policy is a contract" and that "those persons entitled to the proceeds of a life insurance policy must be determined in accordance with the contract." Fid. Bankers Life Ins. Co. v. Dortch, 348 S.E.2d 794, 796 (N.C. 1986).

26. Under North Carolina contract doctrine, the party wishing to enforce an insurance policy must make out a prima facie case that the policy exists and that the enforcing party is a beneficiary. See Orthodontic Ctrs. of Am., Inc. v. Hanachi, 564 S.E.2d 573, 575 (N.C. Ct. App. 2002) ("Generally, a party seeking to enforce a contract has the burden of proving the essential

9

elements of a valid contract . . . ."); Wells v. Jefferson Standard Life Ins. Co., 190 S.E. 744, 746 (N.C. 1937) ("By offering in evidence the policy of insurance and the [insurer's] admission of its execution and delivery and of the death of the insured, the plaintiffs made out a prima facie case [to entitlement to the death benefit]."); Lanier v. E. Life Ins. Co., 54 S.E. 786, 787 (N.C. 1906) (discussing a plaintiff's "prima facie case" for entitlement to a death benefit).

27. Once a prima facie case has been made as to the existence of an insurance policy and the enforcing party's entitlement thereunder, the burden shifts to the party attacking the contract to show the contract's (or provision's) illegality. See Hanachi, 564 S.E.2d at 575 (stating that a contract's "illegality is an affirmative defense with the burden of proving it . . . on the one that asserts it" (internal quotation marks and citation omitted) (omission in original)); Wells, 190 S.E. at 746 (stating that, once a prima facie case for the existence of a contract had been made, "the burden was then upon the defendant to rebut it"); Lanier, 54 S.E. at 787 (stating that, after the plaintiff made out a prima facie case for the existence of a life insurance policy, "the burden of proof [wa]s on defendant to show" that the policy was invalid).

28. "[O]nly the owner of a life insurance policy may change the beneficiary." Adams v. Jefferson-Pilot Life Ins. Co., 558

10

S.E.2d 504, 508 (N.C. Ct. App. 2002); accord Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co., 712 S.E.2d 670, 678 (N.C. Ct. App. 2011) ("[A]ny changes made to an insurance policy affecting the beneficiary designation . . . must be made by the policy owner. If not, the changes are a legal nullity and of no force and effect . . . ."). Although the policy owner need not perfectly comply with the necessary steps to change a beneficiary, the policy owner must at least "substantially compl[y]." Adams, 558 S.E.2d at 508. But "before the doctrine of substantial compliance may be applied, the policy owner must himself take affirmative steps to change the beneficiary, must substantially fulfill the actions required on his part to accomplish the change, [and] must communicate these efforts to an agent of the insurer." Id. at 509; see also 4 Steven Plitt et al., Couch on Insurance § 60:40 (3d ed. 2018) ("Where all the insured does toward effecting a change of beneficiary is to state or express an intention to the effect that the insured desires to change the beneficiary, with no positive formal steps taken to accomplish the change, no change of beneficiary takes place.").

29. Here, there is no dispute that the policy was issued to Joyce Ferron. Even assuming that Athalia Crayton made out a prima facie case as to her status as beneficiary of the life insurance policy per New York Life's records, Taneeda Ferron met her burden

11

of showing the illegality of that beneficiary change.[2] The court does not find Athalia Crayton's evidence — that Joyce Ferron changed the life insurance policy herself via a smartphone — credible. Rather, the court finds Taneeda Ferron's evidence — that Joyce Ferron did not make and could not have made the beneficiary change via a smartphone — credible.

30. Having found that the evidence does not show that Joyce Ferron changed the life insurance beneficiary via smartphone, and in light of the total lack of evidence that she (or anyone else on her instructions) took any other actions to effect the beneficiary change or communicate the same to the insurer, the court finds that Joyce Ferron did not substantially comply with the requirements for making a beneficiary change. See Adams, 558 S.E.2d at 509; Primerica, 712 S.E.2d at 678. As a result, the December 19, 2016 beneficiary change cannot be given effect.

31. Absent the invalid beneficiary change, Taneeda Ferron is the proper beneficiary and is entitled to the remaining death

---

[2] Athalia Crayton argues that she has established a prima facie case of entitlement by showing that the company records reflect her as the beneficiary as a result of an online change. She argues that Taneeda Ferron bears the burden of establishing that the beneficiary change on December 19, 2016, was not proper. Taneeda Ferron argues that Athalia Crayton has the burden of showing that the beneficiary change was made properly and that Athalia Crayton has failed to do so. The typical rule is that "the person claiming as substituted or redesignated beneficiary has the burden of proving that there has been an effective change of beneficiary," Plitt et al., supra, § 60:68. However, even assuming that Taneeda Ferron had the burden of showing the beneficiary change was improperly made, the court finds that she has met that burden.

12

benefit under the New York Life policy.  See <u>Equitable Trust Co. v. Widows' Fund of Oasis and Omar Temples of Charlotte</u>, 177 S.E. 799, 801 (N.C. 1935) ("[T]he court concludes upon the entire record that . . . the change of beneficiary was invalid.  It necessarily follows that the [previous beneficiary] is entitled to the proceeds . . . ."); Plitt et al., <u>supra</u>, § 60:79.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that judgment be entered in favor of Taneeda Ferron, and that she be awarded the remaining death benefit, totaling $15,426.05.  The Clerk of Court shall tender the funds held by the court, with all interest earned, to Taneeda Ferron.

A separate judgment will issue.

                                      /s/   Thomas D. Schroeder
                                   United States District Judge

January 15, 2019