IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NEW YORK LIFE INSURANCE    )
COMPANY,                   )
                           )
        Plaintiff,         )
                           )
        v.                 )    1:17-cv-593
                           )
ATHALIA CRAYTON; TANEEDA   )
FERRON,                    )
                           )
        Defendants.        )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This life insurance interpleader action is before the court on Defendant Athalia Crayton's post-trial motion for relief from the court's finding that the proper beneficiary of the death benefit accruing upon the passing of her mother, Joyce Ferron, is her sister, Defendant Taneeda Ferron. The motion seeks amended and additional findings of fact under Federal Rule of Civil Procedure 52(b), or alternatively a new trial under Rule 59. For the reasons set forth below, the motion will be denied.

I.  **BACKGROUND**

The court entered findings of fact after the bench trial in this case pursuant to Rule 52(a)(1). See (Doc. 55 ¶¶ 1-23). Summarized, those facts are as follows:

Joyce entered into a life insurance contract with Plaintiff New York Life Insurance Company ("New York Life") on or about

September 17, 2004. (Id. ¶¶ 1-2.) She designated Taneeda as the beneficiary. (Id. ¶ 2.) Through the years, Joyce communicated with New York Life several times in order to make changes to the policy, provide corrected personal information, and/or make requests; each time, she did so via written letter. (Id. ¶¶ 5-7.) From 2010 through late 2016 — except for roughly six months in mid-2016 — Joyce lived with Taneeda in Columbia, South Carolina. (Id. ¶ 8.) By late 2016, Joyce suffered from a number of severe health conditions, including Stage IV cancer, glaucoma, osteoarthritis, and hearing loss. (Id. ¶¶ 9, 15.) She did not own a computer or subscribe to an internet service, and her electronic devices were limited to a "flip phone" and a CapTel telephone.[1] (Id. ¶ 12.)

On December 19, 2016, through New York Life's internet portal, Taneeda was removed as the beneficiary of Joyce's life insurance policy and replaced with Athalia. (Id. ¶ 13.) Several days later, on December 23, 2016, Athalia took Joyce to live with her near High Point, North Carolina. (Id. ¶ 8.) When Taneeda received notice of the beneficiary change, she contacted New York Life to contest it. (Id. ¶ 14.) On January 10, 2017, Joyce passed away from her cancer, and the insurance policy death benefit became due in the amount of $25,278.65. (Id. ¶¶ 15-16.) Athalia and Taneeda

---

[1] CapTel telephones — designed for people with hearing loss — transcribe spoken words into text that can be read on a screen. (Doc. 55 ¶ 12.)

both claimed entitlement to the proceeds, although they reached agreement that New York Life should remit $9,852.60 to a funeral home to cover Joyce's funeral expenses. (Id. ¶ 17.) New York Life did so, leaving $15,426.05 in proceeds. (Id. ¶¶ 17–18.)

Faced with conflicting claims to the remaining proceeds, New York Life filed an interpleader action in this court and deposited the proceeds with the Clerk of Court, after which the insurer was dismissed from the case. (Doc. 16.) The court conducted a bench trial on January 10, 2019. Athalia presented her own testimony, as well as that of her husband, Robert Crayton, and her brother, Clifford Thompson, and introduced exhibits. Athalia's evidence included her testimony of observing Joyce using a smartphone on the day the beneficiary was changed, and Thompson's testimony that Joyce told him she changed the beneficiary online. Taneeda then presented her own testimony, introduced exhibits, and rested. Taneeda's evidence included her testimony about Joyce's inexperience with computers and severe health problems, along with Taneeda's observations of Joyce during the day the policy beneficiary was changed.

For the reasons explained in the court's prior opinion, the court did "not find Athalia Crayton's evidence — that Joyce Ferron changed the life insurance policy herself via a smartphone — credible." (Doc. 55 ¶ 29.) Instead, the court found "Taneeda Ferron's evidence — that Joyce Ferron did not make and could not

3

have made the beneficiary change via a smartphone — credible." (Id.) As a result, the court found that Joyce had not substantially complied with the requirements of North Carolina law as to changing life insurance beneficiaries. See Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co., 712 S.E.2d 670, 678 (N.C. Ct. App. 2011) ("[A]ny changes made to an insurance policy affecting the beneficiary designation . . . must be made by the policy owner. If not, the changes are a legal nullity and of no force and effect . . . ."); Adams v. Jefferson-Pilot Life Ins. Co., 558 S.E.2d 504, 509 (N.C. Ct. App. 2002) (noting that it is enough for a policyholder to "substantially compl[y]" with the requirement that "only the owner of a life insurance policy may change the beneficiary," but that "the policy owner must himself take affirmative steps to change the beneficiary, substantially fulfill the actions required on his part to accomplish the change, [and] must communicate these efforts to an agent of the insurer"). Therefore, the court found that the insurance proceeds were due to Taneeda, the original beneficiary, and entered judgment to that effect on January 15, 2019. (Doc. 56.)

On February 12, 2019, Athalia timely filed the instant motion under Rules 52(b) and 59, purporting to identify a number of errors in the court's factfinding and reasoning. (Doc. 57.) Taneeda

responded (Doc. 58), and the motion is now ready for decision.[2]

**II. ANALYSIS**

    **A.    Failure to Adhere to Local Rules**

Local Civil Rule 7.3(a) requires that "[a]ll motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief except as provided in section (j) of this rule. Each motion shall be set out in a separate pleading." Section (j) of the rule lists various motions that may be filed without a separate brief; Athalia's motion is not one of them. See Local Rule 7.3(j). Notwithstanding this rule, Athalia — who is represented by counsel — filed her motion without a separate brief. For this reason alone, her motion will be denied. See Wolfe Fin. Inc. v. Rodgers, No. 1:17cv896, 2019 WL 203183, at *17 (M.D.N.C. Jan. 15, 2019) ("[Defendants'] Motion fails to satisfy the[] requirements [of Local Rule 7.3(a)]. This failure alone justifies its denial." (citation and footnote omitted)). Nevertheless, because it is readily apparent that the substance of the motion also lacks merit, the court will deny it on that ground as well, as explained below.

    **B.    Standards of Review**

Pursuant to Rule 52(b), upon a timely motion, "the court may amend its findings — or make additional findings — and may amend

---

[2] Athalia did not file a reply.

5

the judgment accordingly." Fed. R. Civ. P. 52(b). Rule 52(b) motions "are not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories." Goodwin v. Cockrell, No. 4:13-cv-199-F, 2015 WL 12851581, at *1 (E.D.N.C. Dec. 30, 2015) (quoting Wahler v. Countrywide Home Loans Inc., No. 1:05CV349, 2006 WL 3327074, at *1 (W.D.N.C. Nov. 15, 2006)). "Instead, these motions are intended to correct manifest errors of law or fact or to present newly discovered evidence." Id. (quoting Wahler, 2006 WL 3327074, at *1).

Pursuant to Rule 59(a), upon a timely motion after a bench trial, the court may grant a new trial or "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(1)(B), (a)(2). "A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." Charles Alan Wright et al., Federal Practice & Procedure § 2804 (3d. ed. 2019); accord United States v. Carolina E. Chem. Co., Inc., 639 F. Supp. 1420, 1423–24 (D.S.C. 1986)).

A motion under either rule, then, will not be granted without a showing that the court's findings contain manifest error. "Ultimately, the decision on a motion for a new trial rests within

the sound discretion of the trial court." Carolina, 639 F. Supp. at 1424.

**C. Merits**

Athalia lists seven alleged errors in the court's prior findings. Each will be addressed in turn.

First, Athalia argues that the court failed to address the testimony of her husband, Robert Crayton, that "he witnessed Taneeda hand the insurance policy beneficiary change document to the [sic] Joyce Ferron to look over for review and examine the policy beneficiary change document for fraud and improper actions," and that Joyce — after reading the document — stated "Needa, I'm fine with that." (Doc. 57 at 2.) It is unclear from Robert's testimony exactly what the document was; Athalia refers to it as "the insurance policy beneficiary change document" in briefing, but Robert only referred to it on the stand as "the policy."

Whatever the precise nature of the document, Athalia is incorrect that the court "failed to address" Robert's testimony, as the court expressly "d[id] not find Athalia Crayton's evidence as to the change in beneficiary credible." (Doc. 55 ¶ 20.) "Athalia Crayton's evidence," of course, included not just her own testimony but also the testimony of others she offered into

evidence to support her beneficiary change theory.[3] Moreover, even if the court were to fully credit Robert's testimony and find that Joyce understood from Taneeda's documentation that a beneficiary change had been made and stated she was "fine" with it (which it did not), that evidence would not show that Joyce substantially complied with the requirements of North Carolina law for making a beneficiary change. See, e.g., Adams, 558 S.E.2d at 509 ("[T]he policy owner must himself take affirmative steps to change the beneficiary, substantially fulfill the actions required on his part to accomplish the change, [and] must communicate these efforts to an agent of the insurer . . . ."). In any event, it was not manifest error for the court not to have made an individualized finding of fact regarding this particular statement in Robert's testimony.

Second[4] and third, Athalia argues that the court erroneously "place[d] the burden of showing a valid beneficiary change on

---

[3] To the extent Athalia means to argue that Robert's testimony supports the notion that the beneficiary change was made on a paper document, that evidence is even less credible, given that the rest of the evidence in the case supported the proposition that the beneficiary change was made online.

[4] This section of Athalia's motion is entitled "COURT RELIED ON AN INCOMPETENCY 'DEFENSE' THAT WAS ABANDONED BY DEFENDANT TANEEDA FERRON PRIOR TO TRIAL." (Doc. 57 at 2.) However, Athalia makes no actual argument to that effect, which is just as well given that the court expressly found that Joyce "remained mentally competent" at least "through December 19, 2016" — the date of the beneficiary change. (Doc. 55 ¶ 11.) The substance of Athalia's second argument is the same as that of her third argument: that the court mishandled the burden of proof.

8

Athalia" instead of Taneeda. (Doc. 57 at 2–3.) This too is incorrect. The court properly placed on Athalia the prima facie burden of showing the existence of a contract under which she was a beneficiary and placed on Taneeda the burden of showing the illegality of Athalia's status as beneficiary, as required by North Carolina law. See (Doc. 55 ¶ 27 (citing Orthodontic Ctrs. of Am., Inc. v. Hanachi, 564 S.E.2d 573, 575 (N.C. Ct. App. 2002); Wells v. Jefferson Std. Life Ins. Co., 190 S.E. 744, 746 (N.C. 1937); and Lanier v. E. Life Ins. Co., 54 S.E. 786, 787 (1906))); (id. ¶ 29). The court's factual finding that Athalia's "evidence as to the change of beneficiary [was not] credible" (id. ¶ 20) does not show that the court placed the legal burden of establishing the validity of the beneficiary change on Athalia, as she now argues; rather, the court first established the facts via credibility findings and then proceeded to apply North Carolina's legal framework to those facts. The application of that framework resulted in the conclusion that, "[e]ven assuming that Athalia Crayton made out a prima facie case" as to the existence of a contract to which she was the beneficiary, "Taneeda Ferron met her burden of showing the illegality of th[e] beneficiary change." (Id. ¶ 29.)

Fourth, Athalia argues that paragraph 19 of the court's findings misstates her testimony. That paragraph reads, in relevant part: "At trial, Athalia Crayton testified that on

December 19, 2016, she gave her mother her smartphone and observed her using it on the internet that morning at Taneeda Ferron's house to change the life insurance beneficiary." (Id. ¶ 19.) In her motion, Athalia claims that her testimony was not that she saw her mother actually making the change, but that she "was shown a confirmation page that the beneficiary change had been made." (Doc. 57 at 3.) The court is unable to say with certainty which of these possibilities is the best interpretation of the relevant part of Athalia's testimony, which was as follows:

> Q: Are you aware of any changes [your mother] made to the insurance policy that day?
>
> A: Yes.
>
> Q: And how are you aware of that?
>
> A: I saw it on the screen of the phone.

Either way, however, any perceived need to clarify Athalia's testimony on this point is obviated by the fact that "[t]rial courts do not grant motions to amend when the amendment would be futile." Wright et al., supra, § 2582; see also Ollier v. Sweetwater Union High Sch. Dist., 858 F. Supp. 2d 1093, 1117 (S.D. Cal. 2012) ("A motion to amend a court's factual and legal findings is properly denied where the proposed additional facts would not affect the outcome of the case or are immaterial to the court's conclusions."). Here, the court has already found Athalia's testimony not to be credible, and therefore the proposed

clarification of her statement in paragraph 19 would do her no good.

Fifth, Athalia argues that the court "overly weighted" the fact that all Joyce's previous communications with New York Life had been in writing in reaching its conclusion that Taneeda met her burden of showing that Joyce did not substantially comply with North Carolina law in making the online beneficiary change. (Doc. 57 at 4.) However, Athalia provides no reason that the court should have weighted the evidence differently. "It is the function of the trial court . . . to weigh evidence," Barry v. United States, 501 F.2d 578, 584 (6th Cir. 1974), and a litigant's bare assertion that the court should have weighted the evidence more in her favor falls far short of showing manifest error in the court's findings.

Sixth, Athalia argues that the court could not have properly applied North Carolina contract law here because no party ever introduced the full life insurance policy — Group Policy No. AA-31 — into evidence. Instead, the parties introduced an insurance certificate issued Joyce by New York Life (which purported to be a "summary of the [policy's] provisions"), as well as Joyce's insurance enrollment form.[5] (Taneeda Exs. 1, 7.) However, the

---

[5] Athalia does not argue that the certificate misrepresents the policy, nor does she point to any specific part of the policy that should have been — but was not — considered in the court's analysis.

11

only provisions of the policy relevant to the dispute in this case are (1) the identity of the original beneficiary, and (2) New York Life's requirements for changing the beneficiary. As to the first, Athalia admitted that Taneeda was the original beneficiary. (Doc. 7 ¶ 2.) As to the second, the court found <u>in Athalia's favor</u> that the beneficiary change "appears to have been in compliance with the change of beneficiary procedures of the policy," as summarized in the certificate. (Doc. 55 ¶ 13.) There is therefore no basis for Athalia to argue that the court's legal conclusions — which centered on requirements of North Carolina contract law applicable to all life insurance policies, <u>see</u> (<u>id.</u> ¶ 28) — are manifestly erroneous merely because neither she nor Taneeda introduced the full policy into evidence.[6]

<u>Seventh</u>, and finally, Athalia argues that the court's findings in footnote 1 of its prior opinion were erroneous. <u>See</u> (<u>id.</u> ¶ 19 n.1). That footnote deals with Athalia's evidence that Joyce had granted her power of attorney, which Taneeda disputed.

---

[6] At several points in her motion, Athalia appears to evince some confusion over the court's ultimate finding that the beneficiary change was not validly made despite the court's finding that the change "appears to have been in compliance with the change of beneficiary procedures of the policy." (Doc. 55 ¶ 13.) The explanation is simple: North Carolina law sets out certain requirements for making a valid change to a life insurance beneficiary. (<u>Id.</u> ¶ 28.) New York Life also set out certain requirements for changing beneficiaries under its particular policy. (<u>Id.</u> ¶ 13.) The fact that the beneficiary change in this case appears to have been in compliance with New York Life's requirements does not show that it was in compliance with North Carolina's requirements — and the court ultimately found that Taneeda met her burden of showing that it was not.

12

(Id.) In addressing this factual dispute, the court stated that it did not need to "determine the legitimacy of the power of attorney" because Athalia "d[id] not claim, nor did she present any evidence, that she changed the beneficiary on Joyce Ferron's life insurance." (Id.) In briefing, Athalia argues that among the recordings Taneeda submitted into evidence is a conversation in which Athalia "stat[ed] to Defendant Ferron that she changed the beneficiary," and that she testified on cross examination "that she does not deny [making] the online changes to Joyce Ferron's life insurance." (Doc. 57 at 6.)

As an initial matter, both of these assertions appear to be affirmative misstatements of the record. As far as the court can tell from its unaided attempt to parse the oft-unintelligible conversations contained in the poor-quality audio submitted into evidence, Athalia actively denied having made changes to her mother's life insurance policy. See (Taneeda Ex. 8 at 6:15–22 (appearing to chronicle Taneeda telling Athalia that she got a letter from New York Life saying Athalia "changed mommy's information," to which Athalia responded "I didn't change [unintelligible] anything")). To the extent any intelligible part of the recording could be construed differently: no party played the recording at trial, nor pointed the court to any specific part of it. "Judges are not like pigs, hunting for truffles buried in the record." Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.,

309 F.3d 433, 436 (7th Cir. 2002) (internal quotation marks omitted); see also id. ("Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material.") As to Athalia's testimony from the stand, the court does not agree with the motion's assertion that she "testified [on cross examination] that she does not deny that she made the online changes." (Doc. 57 at 6.) In fact, her testimony appears to be the exact opposite: when opposing counsel asked Athalia on cross examination whether she had told Taneeda that she did not make the change, she responded: "It may have happened. I'm not going to — I'm not going to deny it."

In addition, as the court has stated throughout, it did not find Athalia's evidence credible. Thus, even if Athalia was to uncover some statement buried in the record in which she claims to have made the beneficiary change herself, that evidence would not change the court's conclusions.[7] Like the rest of her arguments,

---

[7] Moreover, although Athalia appears to argue in her motion that she left open the possibility that she used the power of attorney to make the beneficiary change, she denied any such use from the stand:

Q: Did you ever exercise your authorities under this power of attorney?

A: The only time I've exercised it [is] if I had to get my mother's medical record because I had to get her hospice care when she was living at my home.

then, this final contention fails to provide a basis for the relief requested in the motion.[8] As a result, the motion will be denied.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Athalia Crayton's Motion for Amended or Additional Findings of Fact or a New Trial (Doc. 57) is DENIED.

          / s/   Thomas D. Schroeder
          United States District Judge

June 19, 2019

---

[8] At the end of her motion, Athalia makes a one-sentence "alternative[]" request for a new trial "on the limited issues of Joyce Ferron's computer literacy, capacity to make the insurance beneficiary change electronically, and whether credible evidence shows Joyce Ferron did in fact make the beneficiary change." (Doc. 57 at 9.) Athalia provides no additional argument for granting this relief, and it will therefore be denied.